IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CITGO PETROLEUM | ) | |
| CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-CV-654-TCK-PJC |
| | ) | |
| BULK PETROLEUM CORPORATION, | ) | |
| DARSHAN S. DHALIWAL, and | ) | |
| DEBRA A. DHALIWAL, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is the Motion to Dismiss Counterclaim of Defendant Debra A. Dhaliwal

("Motion to Dismiss") (Doc. 34).

## I.    Factual Background

On January 23, 2009, Plaintiff Citgo Petroleum Corporation ("Citgo") filed its First

Amended Complaint against three Defendants:  Bulk Petroleum Corporation ("Bulk"), a distributor

of Citgo gasoline; Darshan S. Dhaliwal ("Mr. Dhaliwal"), and Debra A. Dhaliwal ("Mrs.

Dhaliwal").  Citgo alleged six counts against Bulk, including a breach of contract claim seeking (1)

$4,011,427.11 in amounts due and owing under certain Marketer Franchise Agreements ("MFAs")

entered into by Citgo and Bulk; (2) interest in the amount of 1.5% per month as set forth in the

MFAs; and (3) damages caused by Bulk's breach.  Citgo also sued Mr. and Mrs. Dhaliwal based

upon a personal guaranty ("Guaranty") executed by Mr. and Mrs. Dhaliwal on July 14, 1995.[1]

Pursuant to the Guaranty, Citgo seeks "the entirety of the indebtedness of Bulk, including . . . unpaid

---

[1] The Guaranty is attached to Citgo's Amended Complaint as Exhibit F.

invoices, amount due and owing on [Bulk's] open account, and any other amount of damages for which [Bulk] is liable . . . in this case." (Am. Compl. ¶ 61.)

On February 9, 2009, Mr. and Mrs. Dhaliwal filed their Combined Answer, and Mrs. Dhaliwal filed a counterclaim ("Counterclaim"). (*See* Doc. 29.) In the Counterclaim, Mrs. Dhaliwal alleges that Citgo is a "creditor" and that Bulk is an "applicant" as those terms are defined by the Equal Credit Opportunity Act, 15 U.S.C. § 1690, *et seq.* ("ECOA") and Regulation B, 12 C.F.R. § 202.1 ("Regulation B"). (*See* Counterclaim ¶ 6.) Mrs. Dhaliwal alleges that the Guaranty obtained by Citgo in connection with the MFAs violates the ECOA and Regulation B because Citgo required such Guaranty "merely on the basis of her marital status – as spouse of Mr. Dhailwal, Bulk's owner[,] and for no other reason." (*Id.* ¶ 9.) As a result of this violation, Mrs. Dhaliwal alleges that she is entitled to declaratory and injunctive relief pursuant to 28 U.S.C. § 2201, *et seq.* and requests that the Court grant judgment in her favor as follows:

(a)   by entering its Order adjudging and declaring that CITGO violated the ECOA Reg. B by requiring Mrs. Dhaliwal to personally guarantee Bulk's indebtedness to CITGO;

(b)   by entering its Order adjudging and declaring that Mrs. Dhaliwal's personal guaranty sued upon in this action is void, unenforceable, canceled and/or rescinded as a result of CITGO's violation of law;

(c)   by entering its Order adjudging and declaring that Mrs. Dhaliwal is entitled to judgment in her favor and against CITGO for recoupment to the extent of all damages sought by CITGO against her in respect to all claims raised in Count VII of its *First Amended Complaint*; and

(d)   by entering its Order entitling Mrs. Dhaliwal, as prevailing plaintiff pursuant to the ECOA, *to recover her attorneys' fees and costs* incurred in connection with her prosecution of her Counterclaim and defense of the claims raised in Count VII of CITGO's *First Amended Complaint*.

2

(Am. Compl., Prayer for Relief, at 13.)  In sum, Mrs. Dhaliwal seeks: (1) a declaration that Citgo

violated Regulation B; (2) a declaration that the Guaranty is void; (3) "recoupment"[2] in the amount

of all damages sought by Citgo for the alleged breach of the Guaranty; and (4) attorneys' fees and

costs.

After Bulk informed the Court that it filed Chapter 11 bankruptcy, the Court stayed the case

as to Bulk on February 26, 2009.  After Mr. Dhaliwal informed the Court that an involuntary

bankruptcy petition was filed against him, the Court stayed the case as to Mr. Dhaliwal on December

23, 2009.  Citgo's claim against Mrs. Dhaliwal for breach of the Guaranty and Mrs. Dhailwal's

Counterclaim have proceeded in accordance with the scheduling order entered December 23, 2009.

Citgo has moved to dismiss the Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6)

("Rule 12(b)(6)"), arguing that the statute of limitations has expired.[3]

## II.      Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court "assume[s] the truth of the

plaintiff's well-pleaded factual allegations and view[s] them in the light most favorable to the

plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  The

inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible

on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).  In order to

---

[2]  The doctrine of recoupment is a common-law doctrine that "permitted a debtor who was sued in a transaction to assert as a 'defense' a claim against the creditor growing out of the same transaction up to the amount of the primary claim asserted by the creditor." *Mayes v. Chrysler Credit Corp.*, 167 F.3d 675, 677 (1st Cir. 1999).  Although "recoupment" as a procedural device "has largely been superseded by the counter-claim provisions of the Federal Rules of Civil Procedure," recoupment is still used to avoid statutes of limitation.  *Id.*

[3]  The parties have also filed motions for summary judgment (Docs. 83, 84), which will be addressed by separate order.

survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 550 U.S. at 570). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In addition, the Tenth Circuit has stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*

## III.   ECOA Statute of Limitations

The ECOA prohibits creditors from discriminating "against any [credit] applicant, with respect to any aspect of a credit transaction . . . on the basis of . . . sex or marital status." 15 U.S.C.

§ 1691(a)(1).  Under Regulation B, promulgated by the Federal Reserve Board, "a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. § 202.7(d).  If a creditor violates Regulation B, an aggrieved applicant may seek actual damages, punitive damages, and/or equitable and declaratory relief.  *See* 15 U.S.C. § 1691e(a)-(c).  If successful on any of these three types of actions, the aggrieved applicant shall be awarded attorneys' fees and costs.  *Id.* § 1691e(d).  At the time this suit was commenced, the ECOA contained a two-year statute of limitations.  *Id.* § 1691e(f).[4]

The ECOA's statute of limitations clearly applies to claims for actual damages, punitive damages, and equitable relief, when such actions are wholly independent of debt-collection actions asserted by creditors.  *See Silverman v. Eastrich Multiple Investor Fund, L.P.*, 51 F.3d 28, 32 (3d Cir. 1995).  There is conflicting federal authority, however, as to whether the statute of limitations applies when an ECOA violation is asserted defensively under the doctrine of recoupment.  *Compare Bolduc v. Beal Bank,* SSB, 167 F.3d 667, 672 (1st Cir. 1999) (explaining that "recoupment" doctrine "allows a defendant to 'defend' against a claim by asserting – up to the amount of the claim– the defendant's own claim against the plaintiff growing out of the same

---

[4] On July 21, 2010, President Barack Obama signed the Dodd-Frank Wall Street Reform and Consumer Protection Act, which amended the ECOA in certain respects, including extending the statute of limitations from two years to five years.  *See* Act of July 21, 2010, Pub. L. No. 111-203, § 1085, 2010 U.S.C.C.A.N. (124 Stat. 1376) 2085.  The Court has found no indication that the five-year statute of limitations is to be applied retroactively; therefore, the relevant statute of limitations is two years.  *See generally* 54 C.J.S. *Limitations of Actions* § 15 ("In the absence of a manifest legislative intent that the limitations statute should apply retroactively or prospectively only, the court will presume a prospective application.") (explaining that, "once a statute of limitations has run, the party relying on the statute has a vested property right in the statute of limitations defense, and changes to the period of limitations cannot be applied retroactively to extinguish that right").

transaction" and that "[r]ecoupment is allowed even where the defendant's claim would be barred

. . . by the statute of limitations") (stating that recoupment doctrine would have allowed the plaintiff

to assert a defensive ECOA violation if the creditor had indeed sued on the credit obligations

connected with the alleged ECOA violation); *Mayes*, 167 F.3d at 677 (explaining that ECOA's

statute of limitations "can be avoided where the claim of an ECOA violation can be brought within

the recoupment doctrine") ("The paradigm case is the spouse who is wrongly made to co-sign or

guarantee a debt but may be unconscious of the violation and lack any incentive to assert the defense

until actually sued on the note or guarantee which may well be more than two years after the original

violation."); *Silverman*, 51 F.3d at 32-33 (plaintiff filed suit in federal court in response to confessed

judgment obtained by creditor in state court) (holding that plaintiff's suit was essentially a

"recoupment defense" to the state court judgment and was not barred by ECOA's statute of

limitations); *Integra Bank/Pittsburgh v. Freeman*, 839 F. Supp. 326, 330 (E.D. Pa. 1993) ("After the

[ECOA] statute of limitations has run , [] the sole ECOA violation damages that [] parties may assert

are those that are cognizable by way of recoupment. Claims by way of recoupment are 'never barred

by the statute of limitations so long as the main action itself is timely.'") *with Fed. Dep. Ins. Corp.

v. Skotzke*, 881 F. Supp. 364, 368 (S.D. Ind. 1994) (holding that, since the defendants' ECOA claims

were barred by statute of limitations, the defendants were "likewise precluded from asserting [an

ECOA violation] as a defense to the FDIC's action"); *Riggs Nat'l Bank of Washington, D.C. v.

Webster*, 832 F. Supp. 147, 151 n.5 (D. Md. 1993) ("The doctrine of recoupment properly applies

in cases where equity demands that a defendant be given a credit that would be due to him but for

a limitations bar when the plaintiff seeks to recover on a parallel debt.  Here, [the party alleging the

ECOA violation] is not due any credit from [the creditor] but is simply asserting a discrimination

claim as a defense to the debt which he owes.  To permit him to do so would, in effect, be to nullify the limitations statute which Congress has enacted.").

There is no Tenth Circuit authority on point, and district court authority within the Tenth Circuit is also conflicting.  *Compare Fed. Deposit Ins. Corp. v. Medmark, Inc.*, 897 F. Supp. 511, 514 (D. Kan. 1995) (following reasoning in *Silverman* and concluding that defendant could "use the alleged ECOA violation defensively to obtain relief from her obligation under the guaranty, even though the statute of limitations for bringing an action for damages under the statute ha[d] expired") *with Fed. Deposit Ins. Corp. v. 32 Edwardsville, Inc.*, 873 F. Supp. 1474, 1480 (D. Kan. 1995) (relying on district court decision that was reversed by Third Circuit in *Silverman* and concluding that "[t]he ECOA does not provide for the invalidation of a guaranty as a remedy for an ECOA violation, and defensive use of the ECOA in this case is therefore impermissible"); *Diamond v. Union Bank and Trust of Bartlesville*, 776 F. Supp. 542, 544 (N.D. Okla. 1991) (holding that ECOA statute of limitations barred assertion of defense based on a violation of Regulation B).

The Court follows the First Circuit and Third Circuit and holds that the ECOA's statute of limitations does not apply when an ECOA violation is asserted defensively under the doctrine of recoupment or its functional equivalent.  These circuit cases represent the weight of authority and what appears to be the trend.  The Court expressly adopts the reasoning in *Silverman* and finds that allowing defensive use of the ECOA after expiration of the statute of limitations best serves the ECOA's remedial purpose.  The Court declines to follow *Diamond*, a Northern District of Oklahoma decision, because it was decided in 1991, well before the Third Circuit and First Circuit reached contrary conclusions.

In this case, Mrs. Dhaliwal seeks the following relief in her Counterclaim: (1) a declaration that Citgo violated Regulation B; (2) a declaration that the Guaranty is void; (3) recoupment in the amount of all damages sought by Citgo for the alleged breach of the Guaranty; and (4) attorneys' fees and costs. (Am. Compl., Prayer for Relief, at 13.)  Applying the Court's legal conclusions to these four requests, the first three requests are not barred by the statute of limitations because (1) they are asserted defensively in response to Citgo's attempt to collect on the Guaranty, (2) they are asserted under the doctrine of recoupment, and (3) they are not attempts to void the "underlying debt obligation" in the MFAs.  Thus, the requests for relief are similar to those asserted and allowed in *Silverman*.  *See Silverman*, 51 F.3d at 33 (allowing aggrieved applicant under ECOA to "obtain relief from her obligations under the Guaranty" but explaining that any potential ECOA violation does not void the "underlying debt obligation or any other guaranties").  Because Mrs. Dhaliwal's request for attorneys' fees and costs is premised on Oklahoma law as well as the ECOA,  (*see* Mrs. Dhaliwal's Resp. to Mot. to Dismiss 6), and no arguments have been made regarding Oklahoma law as an alternative basis for an award of attorneys' fees, Mrs. Dhaliwal's request for attorneys' fees must survive a motion to dismiss.[5]

Citgo's Motion to Dismiss Counterclaim of Defendant Debra A. Dhaliwal (Doc. 34) is DENIED.

**SO ORDERED this 12th day of August, 2010.**

**TERENCE KERN**
**United States District Judge**

---

[5]  For purposes of the ECOA, at least one court has held that a request for attorneys' fees is not tied to the underlying credit transaction, is not in the nature of recoupment, and is therefore subject to the ECOA's statute of limitations. *See Integra Bank/Pittsburgh*, 839 F. Supp. at 331 (explaining that claim for attorney's fees under 15 U.S.C. § 1691e(d) "lacks sufficient nexus with the underlying contract to be asserted by way of recoupment").