IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CITGO PETROLEUM CORPORATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 08-CV-654-TCK-PJC ) |
| BULK PETROLEUM CORPORATION, DARSHAN S. DHALIWAL, and DEBRA A. DHALIWAL, | ) ) ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER

Before the Court are Plaintiff Citgo Petroleum Corporation's Motion for Summary Judgment Against Defendant Debra A. Dhaliwal (Doc. 83) and Motion for Summary Judgment of Defendant Debra A. Dhaliwal (Doc. 84).

**I.     Factual Background**

     A.     <u>Pleadings and Procedural History</u>

On January 23, 2009, Plaintiff Citgo Petroleum Corporation ("Citgo") filed its First Amended Complaint against three Defendants: Bulk Petroleum Corporation ("Bulk"), a distributor of Citgo gasoline; Darshan S. Dhaliwal ("Mr. Dhaliwal"), owner of Bulk; and his wife, Debra A. Dhaliwal ("Mrs. Dhaliwal"). Citgo alleged six counts against Bulk, including a breach of contract claim seeking (1) amounts due and owing under certain Marketer Franchise Agreements ("MFAs") entered into by Citgo and Bulk; (2) interest in the amount of 1.5% per month as set forth in the MFAs; and (3) damages caused by Bulk's breach. Citgo also sued Mr. and Mrs. Dhaliwal based upon a personal guaranty ("Guaranty") executed by Mr. and Mrs. Dhaliwal on July 14, 1995 ("Guaranty Claim"). Pursuant to the Guaranty, Citgo seeks "the entirety of the indebtedness of

Bulk, including . . . unpaid invoices, amount due and owing on [Bulk's] open account, and any other amount of damages for which [Bulk] is liable . . . in this case." (Am. Compl. ¶ 61.)

On February 9, 2009, Mr. and Mrs. Dhaliwal filed their Combined Answer, and Mrs. Dhaliwal filed a counterclaim ("Counterclaim"). (*See* Doc. 29.) In the Counterclaim, Mrs. Dhaliwal alleges that Citgo is a "creditor" and that Bulk is an "applicant" as those terms are defined by the Equal Credit Opportunity Act, 15 U.S.C. § 1690, *et seq.* ("ECOA") and Regulation B, 12 C.F.R. § 202.1, *et seq.* ("Regulation B"). (*See* Counterclaim ¶ 6.) Mrs. Dhaliwal alleges that the Guaranty obtained by Citgo in connection with the MFAs violates the ECOA and Regulation B because Citgo required such Guaranty "merely on the basis of her marital status – as spouse of Mr. Dhailwal, Bulk's owner[,] and for no other reason." (*Id.* ¶ 9.) As a result of this violation, Mrs. Dhaliwal alleges that she is entitled to declaratory and injunctive relief pursuant to 28 U.S.C. § 2201, *et seq.* and requests that the Court grant judgment in her favor as follows:

(a) by entering its Order adjudging and declaring that CITGO violated the ECOA Reg. B by requiring Mrs. Dhaliwal to personally guarantee Bulk's indebtedness to CITGO;
(b) by entering its Order adjudging and declaring that Mrs. Dhaliwal's personal guaranty sued upon in this action is void, unenforceable, canceled and/or rescinded as a result of CITGO's violation of law;
(c) by entering its Order adjudging and declaring that Mrs. Dhaliwal is entitled to judgment in her favor and against CITGO for recoupment to the extent of all damages sought by CITGO against her in respect to all claims raised in Count VII of its *First Amended Complaint*; and
(d) by entering its Order entitling Mrs. Dhaliwal, as prevailing plaintiff pursuant to the ECOA, *to recover her attorneys' fees and costs* incurred in connection with her prosecution of her Counterclaim and defense of the claims raised in Count VII of CITGO's *First Amended Complaint*.

(*Id.*, Prayer for Relief, at 13.) In sum, Mrs. Dhaliwal seeks: (1) a declaration that Citgo violated Regulation B; (2) a declaration that the Guaranty is unenforceable against Mrs. Dhaliwal; (3)

"recoupment"[1] in the amount of all damages sought by Citgo for the alleged breach of the Guaranty; and (4) attorneys' fees and costs.

After Bulk informed the Court that it filed Chapter 11 bankruptcy, the Court stayed the case as to Bulk on February 26, 2009. After Mr. Dhaliwal informed the Court that an involuntary bankruptcy petition was filed against him, the Court stayed the case as to Mr. Dhaliwal on December 23, 2009. Citgo's claim against Mrs. Dhaliwal for breach of the Guaranty and Mrs. Dhailwal's Counterclaim have proceeded in accordance with the scheduling order entered December 23, 2009. On August 12, 2010, the Court denied Citgo's motion to dismiss and held that Mrs. Dhaliwal's Counterclaim was not barred by the relevant statute of limitations. (*See* Doc. 105.) Specifically, the Court followed those circuits holding that (1) an ECOA violation may be asserted defensively under the doctrine of recoupment after expiration of the ECOA's statute of limitations; and (2) if successful, the defense allows the victim to avoid the wrongfully obtained obligation. (*See id.* 7 (explaining split in authority and following First and Third Circuits).)[2] The Court then applied such conclusion to this case and held:

> In this case, Mrs. Dhaliwal seeks the following relief in her Counterclaim: (1) a declaration that Citgo violated Regulation B; (2) a declaration that the Guaranty is void; (3) recoupment in the amount of all damages sought by Citgo for the alleged breach of the Guaranty; and (4) attorneys' fees and costs. (Am. Compl., Prayer for

---

[1] The doctrine of recoupment is a common-law doctrine that "permitted a debtor who was sued in a transaction to assert as a 'defense' a claim against the creditor growing out of the same transaction up to the amount of the primary claim asserted by the creditor." *Mayes v. Chrysler Credit Corp.*, 167 F.3d 675, 677 (1st Cir. 1999). Although "recoupment" as a procedural device "has largely been superseded by the counter-claim provisions of the Federal Rules of Civil Procedure," recoupment is still used to avoid statutes of limitation. *Id.*

[2] As an example of contrary authority, see *F.D.I.C. v. 32 Edwardsville, Inc.*, 873 F. Supp. 1474, 1480 (D. Kan. 1995).

3

> Relief, at 13.)³  Applying the Court's legal conclusions to these four requests, the first three requests are not barred by the statute of limitations because (1) they are asserted defensively in response to Citgo's attempt to collect on the Guaranty, (2) they are asserted under the doctrine of recoupment, and (3) they are not attempts to void the "underlying debt obligation" in the MFAs. Thus, the requests for relief are similar to those asserted and allowed in *Silverman*. *See Silverman* [*v. Eastrich Multiple Investor Fund, L.P.*, 51 F.3d 28, 33 (3d Cir. 1995)] (allowing aggrieved applicant under ECOA to "obtain relief from her obligations under the Guaranty" but explaining that any potential ECOA violation does not void the "underlying debt obligation or any other guaranties").

(*Id.* 8 (footnote added).) Based on this ruling, Mrs. Dhaliwal's "Counterclaim" under the ECOA is hereinafter construed and treated as a defense that, if successful, will allow her to avoid her obligation under the Guaranty. *See Silverman*, 51 F.3d at 33 ("If [the creditor] did in fact violate the ECOA, then plaintiff may have a valid defense and obtain relief from her obligations under the Guaranty.").⁴

B.  Summary Judgment Record

Citgo and Mrs. Dhaliwal filed cross motions for summary judgment on the Guaranty Claim against Mrs. Dhaliwal. Undisputed portions of the summary judgment record reflect the following timeline of events. Mr. and Mrs. Dhaliwal met in college and were married in 1976. Sometime after the marriage, Mr. Dhaliwal became the one-hundred percent shareholder of Bulk, a gasoline distribution business. In the mid-1990s, Citgo began a contractual relationship with Bulk. Citgo maintained an "open account" with Bulk; product sales to Bulk were "on trade credit;" and Citgo provided Bulk "EFT Notices for charges to its account." (*See* Lisa McMearn Aff., Ex. A to Citgo's Mot. for Summ. J.)  On or around June 13, 1995, Bulk transmitted an "Application for Credit" to

---

³ In the Court's Order (Doc. 105), it erroneously cited the Amended Complaint. The cite should have been to the Counterclaim.

⁴ Even if Mrs. Dhaliwal successfully demonstrates this defense, the Guaranty will still be valid and enforceable as to Mr. Dhaliwal. *See Silverman*, 51 F.3d at 33.

4

Citgo ("Application"). The Application requested monthly credit from Citgo in the amount of $300,000 for an estimated 675,000 gallons of gasoline per month. There is no evidence in the record as to what, if any, documents were submitted to Citgo in conjunction with the Application. One month after transmission of the Application, on July 14, 1995, Mr. and Mrs. Dhaliwal executed the Guaranty to Citgo. The Guaranty provides:

> For value received and in consideration of the credit and extension of time which you and/or your successors and assigned may hereinafter extend to Debtor hereinafter named [Bulk], the undersigned hereby jointly and unconditionally guarantee(s) payment when due of any and all present and future indebtedness owed by [Bulk].

(Guaranty, Ex. A-4 to Citgo's Mot. for Summ. J.) On or around March 18, 1996, an accounting firm prepared a personal financial statement "of assets and liabilities – historical cost basis of Darshan S. Dhaliwal as of December 31, 1995" ("1995 PFS"). (1995 PFS, Ex. G to Mrs. Dhaliwal's Mot. for Summ. J.) The 1995 PFS totals Mr. Dhaliwal's net worth at over $11 million. This amount included assets owned by Bulk, assets owned jointly by Mr. and Mrs. Dhaliwal, and assets owned "separately" by Mr. Dhaliwal. (*See id.*; Debra Dhailwal's Resp. to Pl.'s First Interrogs. at Answer No. 10, Ex. F to Mrs. Dhaliwal's Mot. for Summ. J (admitting that certain assets on 1995 PFS were jointly owned).)

Approximately eight years later, on September 19, 2003, Citgo entered into a MFA with "Bulk Petroleum Corp of Illinois," and on February 27, 2004, Citgo entered into a MFA with "Bulk Petroleum Corp of Wisconsin." Sometime after December 31, 2005, a Personal Financial Statement for Mr. and Mrs. Dhaliwal was prepared for the year 2005 ("2005 PFS"). (2005 PFS, Ex. C to Citgo's Mot. for Summ. J.) On an unspecified date in 2006, Citgo entered into a third MFA with "Bulk Petroleum (Michigan)." Pursuant to the MFAs, Citgo issued invoices to Bulk for the gasoline

it purchased on or around September and October 2008. Bulk failed to pay for these purchases, and Citgo seeks payment from Mrs. Dhaliwal pursuant to the Guaranty.

## II. Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986). The relevant legal standard does not change where the parties file cross motions for summary judgment, and each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

## III. ECOA's Non-Discrimination Provision and Regulation B

Before addressing the parties' motions, it is necessary to provide background information on the ECOA and its implementing regulation, Regulation B. The ECOA contains a non-discrimination provision that prohibits creditors from discriminating "against any applicant, with respect to any aspect of a credit transaction . . . on the basis of . . . sex or marital status." 15 U.S.C. § 1691(a)(1). One purpose of this provision "is to eradicate credit discrimination waged against

women, especially married women whom creditors traditionally refused to consider for individual credit." *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 771 (6th Cir. 2005) (internal quotation marks omitted). Similarly, and most relevant to this case, "it was a purpose of the statute to prevent loans from being conditioned automatically on the securing of the signature of the non-borrowing spouse." *Mayes v. Chrysler Credit Corp.*, 167 F.3d 675, 676 (1st Cir. 1999).

In furtherance of the ECOA, the Federal Reserve Board promulgated Regulation B. *See* 68 Fed. Reg. 13144, 13144 (March 18, 2003) (explaining that the "ECOA is implemented by the Board's Regulation B"). "In addition to a general prohibition against discrimination, the regulation contains specific rules concerning: the taking and evaluation of credit applications, how credit history information is reported on accounts used by spouses, procedures and notices for credit denials and other adverse action, *and limitations on requiring signatures of persons other than the applicant on credit documents*." *Id.* (emphasis added). Regulation B sets up a comprehensive scheme outlining when a creditor discriminates based on sex or marital status by requiring the signature of a spouse on any credit instrument. *See* 12 C.F.R. § 202.7(d)(1)-(6). Relevant to this case, Regulation B provides:

> (d) Signature of spouse or other person–
>
> (1) Rule for qualified applicant.[5] Except as provided in this paragraph, *a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested.* A creditor shall not deem the submission of a joint financial statement or other evidence of jointly held assets as an application for joint credit.

---

[5] In her motion, Mrs. Dhaliwal alleges a violation of 12 C.F.R. § 202.7(d)(1) and seeks to prove that Mr. Dhaliwal was a "qualified applicant." (*See* Mrs. Dhaliwal's Mot. for Summ. J. 5 (arguing and presenting evidence that Mr. Dhaliwal was a "qualified applicant")). Mrs. Dhaliwal does not allege a violation of 12 C.F.R. § 202.7(d)(5), which sets forth the signature rules for unqualified applicants.

7

> . . .
> (3) Unsecured credit--community property states.[6] *If a married applicant requests unsecured credit and resides in a community property state, or if the applicant is relying on property located in such a state, a creditor may require the signature of the spouse on any instrument necessary, or reasonably believed by the creditor to be necessary, under applicable state law to make the community property available to satisfy the debt in the event of default if:*
> > (I) Applicable state law denies the applicant power to manage or control sufficient community property to qualify for the credit requested under the creditor's standards of creditworthiness; and
> > (ii) The applicant does not have sufficient separate property to qualify for the credit requested without regard to community property.
> . . .
> (6) Rights of additional parties. A creditor shall not impose requirements upon an additional party that the creditor is prohibited from imposing upon an applicant under this section.

12 C.F.R. § 202.7(d)(1), (3), (6) (footnotes added).

Based on this regulatory scheme, "[i]t is well-established that the ECOA and its implementing regulations prohibit a creditor from requiring a spouse's signature on a note when the applicant individually qualifies for the requested credit." *Riggs Nat'l Bank of Wash., D.C. v. Linch*, 36 F.3d 370, 374 (4th Cir. 1994) (defining the "determinative factual issue as whether the bank made a determination that [the husband] was not independently creditworthy for the requested loan before it required that [the wife] also be a personal guarantor of the loan"). In cases similar to this one, the "discrimination" prohibited by 15 U.S.C. § 1690 occurs when a guarantor/wife[7] is forced to sign a credit instrument based solely on her marital status, despite her husband's individual creditworthiness. *See F.D.I.C. v. Medmark*, 897 F. Supp. 511, 514-15 (D. Kan. 1995) (explaining

---

[6] In this case, Citgo argues, *inter alia*, that the exception set forth in 12 C.F.R. § 202.7(d)(3) ("community property exception") authorized it to obtain Mrs. Dhaliwal's signature.

[7] As explained below, the definition of "applicant," at least for purposes of the signature rules set forth in § 202.7(d), includes guarantors such as Mrs. Dhaliwal. *See* 12 C.F.R. § 202.2(e).

that, in requiring wife to sign guaranty as condition of loan despite her husband's independent creditworthiness, the bank "discriminated against [her] on the basis of marital status").

According to Regulation B, the signature rules set forth in § 202.7(d) apply to personal guaranties issued in conjunction with a credit transaction. Regulation B expressly states that "[f]or purposes of § 202.7(d) [governing signature rules], the term ['applicant'] includes guarantors, sureties, endorsers, and similar parties." 12 C.F.R. § 202.2(e) (emphasis added); *see also* 1 Fed. Reg. Real Estate & Mortgage Lending § 8.7 (4th ed.) (explaining that "guarantors, sureties, endorsers, and similar parties are given the status of applicants for purposes of the signature rules contained in the extension of credit provisions of Regulation B"). Further, Regulation B provides that "[a] creditor shall not impose requirements upon an additional party that the creditor is prohibited from imposing upon an applicant under this section." 12 C.F.R. § 202.7(d)(6). The Official Comments explaining § 202.7(6) provide:

> 1. Guarantees. *A guarantee on an extension of credit is part of a credit transaction and therefore subject to the regulation.* A creditor may require the personal guarantee of the partners, directors, or officers of a business, and the shareholders of a closely held corporation, even if the business or corporation is creditworthy. The requirement must be based on the guarantor's relationship with the business or corporation, however, and not on a prohibited basis. For example, a creditor may not require guarantees only for women-owned or minority-owned businesses. Similarly, a creditor may not require guarantees only of the married officers of a business or the married shareholders of a closely held corporation.
>
> 2. Spousal guarantees. The rules in § 202.7(d) bar a creditor from requiring the signature of a guarantor's spouse just as they bar the creditor from requiring the signature of an applicant's spouse. *For example, although a creditor may require all officers of a closely held corporation to personally guarantee a corporate loan, the creditor may not automatically require that spouses of married officers also sign the guarantee.* If an evaluation of the financial circumstances of an officer indicates that an additional signature is necessary, however, the creditor may require the signature of another person in appropriate circumstances in accordance with § 202.7(d)(2).

9

68 Fed. Reg. 13144, 13192; *see also* 1 Fed. Reg. Real Estate & Mortgage Lending § 8:69 (4th ed.) ("The creditor may not impose upon the guarantor or cosigner any signature requirements that could not have been imposed on an applicant.") (citing § 202.7(d)(6) and Official Comments thereto). Thus, Regulation B, by its definitions and Official Comments, extends the ECOA's non-discrimination protections to guarantors. *See, e.g.*, *Riggs Nat'l Bank of Washington, D.C.*, 36 F.3d 370 (involving wife who signed personal guaranty of corporate debt); *Medmark*, 897 F. Supp. 511 (same); *Integra Bank/Pittsburgh v. Freeman*, 839 F. Supp. 326 (E.D. Pa. 1993) (same).

## IV.   Burden of Proof

The Tenth Circuit has not reached the question of whether the burden-shifting analysis utilized in employment discrimination cases applies in ECOA credit-discrimination cases. *See Matthiesen v. Bank One Mortg. Corp.*, 173 F.3d 1242, 1246 n.4 (10th Cir. 1999) ("Because the resolution of that issue is determinative here, we do not reach the question of whether the *McDonnell Douglas* standard applies in credit discrimination cases.") (noting that Seventh Circuit had "recently rejected that standard in most credit discrimination cases"). Neither party urged the Court to employ anything other than a traditional proof analysis in analyzing the motions for summary judgment, and the parties' briefs are not written in burden-shifting terms. Therefore, the Court will employ a traditional proof analysis. In this case, that means (1) Citgo bears the burden of proving that Mrs. Dhaliwal is in breach of the Guaranty and the amount of its damages, and (2) Mrs. Dhaliwal bears the burden of proving the elements of her ECOA defense, s*ee Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) (explaining general rule that burden of proving affirmative defenses rests with the defendant). The Court further holds that Citgo bears the burden of proving any exceptions to Mrs. Dhaliwal's ECOA defense. *See Koch v. Shell Oil Co.*, 52 F.3d 878, 880 (10th Cir. 1995)

(holding that plaintiff had burden of proving statutory exception to a statute of repose defense raised by the defendant); *see generally* A.M. Swarthout, Annotation, *Burden of Allegation and Proof in Civil Cases as Regards Exception in Statute*, 130 A.L.R. 440 (1941) (explaining general common law rule that "[w]here an exception appears in a different section, subdivision, or clause from that containing the enacting words of a statute, or appears in another statute, the view is taken in many cases that the party relying upon the statute need not allege facts showing that the present case does not come within the exception, such allegations being matter to be pleaded by the opposite party").

## V.     Citgo's Motion for Summary Judgment

Citgo contends: (1) Bulk defaulted under the MFAs in an undisputed amount, and Mrs. Dhaliwal guaranteed Bulk's debt; (2) Citgo did not violate the ECOA because (a) Mrs. Dhaliwal does not have standing to assert an ECOA violation, (b) the statute of limitations has expired, and (c) the community property exception applies;[8] and (4) Citgo is entitled to pre-judgment interest and attorneys' fees.

A.     <u>Amount Owed by Bulk Under MFAs/Mrs. Dhaliwal's Guaranty of Bulk's Debt</u>

Citgo has established, as a matter of law, the principal amount owed under the Guaranty as a matter of law in the amount of $3,846,208.41. (*See* McMearn Aff., Ex. A to Citgo's Mot. for Summ. J., at ¶ 11.) Confusingly, Mrs. Dhaliwal contends that a genuine question of fact exists as to whether the amount owed should be *greater*. Specifically, Mrs. Dhaliwal cited deposition

---

[8] Citgo did not include facts or argument regarding the community property exception in its motion for summary judgment, although it did discuss such exception in its reply brief. Citgo did, however, cite record facts and assert the community property exception in its response to Mrs. Dhaliwal's motion for summary judgment. Mrs. Dhaliwal responded to these facts and argument in her reply. Based on the briefing, it is clear that Citgo seeks not only to defeat Mrs. Dhaliwal's motion but also to be granted summary judgment in its favor based on the community property exception. Therefore, the Court addresses the community property exception in this section of the Order.

testimony of John Gerth ("Gerth"), Bulk's accountant, who testified that his records showed that $3,921,670.00 is owed. The Court has carefully reviewed Gerth's testimony and finds that it does not create any genuine dispute of fact as to the amount due and owing. At best, the testimony reveals that Gerth's records were incomplete but does genuinely call into question Citgo's calculations, which are supported by affidavit and supporting documents. Mrs. Dhaliwal also contends that Citgo's Amended Complaint creates a question of fact as to the amount owed because Citgo originally sought $4,011,427.11. However, as explained by Citgo, the amount sought was reduced from $4,011,427.11 to $3,846,208.41 to reflect activity on the account occurring after filing of the Complaint. The Court finds no genuine disputes as to the principal amount owed under the Guaranty. Further, Mrs. Dhaliwal does not dispute that she signed the Guaranty and is liable thereunder but for the ECOA defense.

      B.      <u>ECOA - Standing</u>

Citgo contends that Mrs. Dhaliwal lacks "standing" to assert an ECOA violation because she was not an "applicant" for credit, *see* 15 U.S.C. § 1690, 12 C.F.R. § 202.7(d)(1), but instead merely signed a personal guaranty in conjunction with a corporate credit transaction. As explained above, however, Regulation B extends protection to Mrs. Dhaliwal as someone who was allegedly required to sign a spousal guaranty of a corporate debt. *See supra* Part II. Since the ECOA's inception, courts have followed Regulation B and allowed spouses similarly situated to Mrs. Dhaliwal to challenge their obligations under a guaranty as violative of § 202.7(d). *See supra* Part II. These courts have done so without discussion of whether Regulation B's definition of "applicant," which expressly includes guarantors, is entitled to administrative deference. *See, e.g., Silverman,* 51 F.3d 28; *Medmark*, 897 F. Supp. 511; *Integra Bank/Pittsburgh*, 839 F. Supp. 326; *see generally* 1 Fed.

Reg. Real Estate & Mortgage Lending § 8:69 (4th ed.) (citing cases); *see also F.D.I.C. v. 32 Edwardsville, Inc.*, 873 F. Supp. 1474, 1480 n.2 (D. Kan. 1995) (noting that Third Circuit had decided that a wife who served as guarantor had standing as an "applicant" pursuant to definition contained in the regulations). Oklahoma law, although not binding upon this Court's interpretation of a federal statute, is in accord. *See Western Star Finance, Inc. v. White*, 7 P.3d 502, 505-06 (Okla. Civ. App. 2000) (holding that wife who was required to sign a guaranty was entitled to trial on whether lender violated ECOA, although without discussion or citation to relevant regulation).[9]

One circuit court, however, has expressed "doubt" as to whether the Federal Reserve Board's decision to define "applicant" as embracing guarantors, *see* 12 C.F.R. § 202.2(e), is entitled to administrative deference. *See Moran Foods, Inc. v. Mid-Atlantic Market Dev't Co., LLC*, 476 F.3d 436, 441 (7th Cir. 2007). In *Moran*, Judge Posner stated:

> The Federal Reserve Board, however, has defined "applicant" for credit (the term in the statute) to include a guarantor. We doubt that the statute can be stretched far enough to allow this interpretation. . . . It is true that courts defer to administrative interpretations of statutes when a statute is ambiguous, and that this precept applies to the Federal Reserve Board's interpretation of ambiguous provisions of the Equal Credit Opportunity Act. But there is nothing ambiguous about "applicant" and no way to confuse an applicant with a guarantor. What is more, to interpret "applicant" as embracing "guarantor" opens vistas of liability that the Congress that enacted the Act would have been unlikely to accept.

*Id.* at 441 (internal citations omitted). Relying on *Moran*, at least one district court has dismissed an ECOA claim based on a guarantor's lack of "applicant" status. *See Champion Bank v. Reg'l Dev't, LLC*, 08CV1807, 2009 WL 1351122, at * 3 (E.D. Mo. May 13, 2009) ("Extending the protections of the ECOA to someone in [the plaintiff's] position expands the ECOA beyond its intended purpose and leads to circular and illogical results. [The plaintiff] cannot show

---

[9] Mrs. Dhaliwal incorrectly argued that Oklahoma law is controlling as to this issue.

13

discrimination by virtue of the fact that she chose to guarantee her husband's business loan."). *But see LOL Fin. Co. v. Faison, Jr. Revocable Trust*, No. 09-741, 2010 WL 3118630, at * 7 (D. Minn. July 13, 2010) (declining to follow *Moran* and *Champion* and stating that the court was "wary of categorically discounting the Federal Reserve Board's Regulations").

Mrs. Dhaliwal urges the Court to follow the weight of authority implicitly approving Regulation B's definitions and regulatory scheme, while Citgo urges the Court to follow *Moran*, which explicitly rejects Regulation B's extension of protection to guarantors. In ruling on Citgo's motion to dismiss, which sought dismissal based on the ECOA's statute of limitations, this Court previously followed and adopted the Third Circuit's reasoning in *Silverman*. (*See* Doc. 105.) In *Silverman*, the Third Circuit allowed a guarantor similarly situated to Mrs. Dhaliwal to assert an ECOA violation as a defense to a creditor's suit seeking judgment on a guaranty. One issue presented was whether the Federal Reserve Board's new expansion of the term "applicant" to include "guarantors" was effective immediately upon its passage or only after the mandatory compliance date. The court approved the district court's reasoning that "the ECOA has from its inception prohibited requiring spousal guaranties" and held that "conferring standing upon guarantors places no additional requirements upon creditors, which accords with the Board's commentary, and thus the expanded definition of 'applicant' was immediately effective December 16, 1985." *Silverman*, 51 F.3d at 31. Although the court in *Silverman* did not explicitly discuss whether the regulation's inclusion of guarantors within the definition of applicant was entitled to administrative deference, the court certainly exercised such deference and indicated that guarantors had been entitled to the ECOA's protections both before and after the Federal Reserve Board's expanded definition in 12 C.F.R. § 202.2(e). As shown above, other courts have also regularly

exercised such deference to Regulation B's definition of "applicant" and overall implementation scheme.

This Court declines to follow *Moran* and adheres to Regulation B, such that guarantors who are required to sign a guaranty in connection with an extension of credit covered by the ECOA will continue to receive protection. The court's holding in *Moran* eliminates entire aspects of the Federal Reserve Board's implementation scheme. *See, e.g.*, 12 C.F.R. § 202.7(d)(6) and Official Comments (discussing rules governing personal spousal guarantors of corporate credit transaction). Consumers have come to rely upon these rules, and creditors have been trained to follow them. Unless and until the Tenth Circuit mandates that the Federal Reserve Board's definitions and implementation scheme indeed run afoul of congressional intent, this Court adheres to Regulation B, *Silverman*, and other similar cases extending the ECOA's protections to guarantors such as Mrs. Dhaliwal. Therefore, Mrs. Dhaliwal has standing to assert an ECOA violation.

### C.  ECOA - Statute of Limitations

The Court has already rejected Citgo's statute of limitations argument at the motion to dismiss stage, and the Court's Opinion and Order (Doc. 105) is incorporated herein by reference. Citgo did not raise any new arguments, and there is no need to further address this issue at the motion for summary judgment stage.

### D.  Community Property Exception

The community property exception provides:

> 3) Unsecured credit--community property states. If a married applicant requests unsecured credit and resides in a community property state, or if the applicant is relying on property located in such a state, a creditor may require the signature of the spouse on any instrument necessary, or reasonably believed by the creditor to be necessary, under applicable state law to make the community property available to satisfy the debt in the event of default if:

15

>    (i) Applicable state law denies the applicant power to manage or control sufficient community property to qualify for the credit requested under the creditor's standards of creditworthiness; and
>    (ii) The applicant does not have sufficient separate property to qualify for the credit requested without regard to community property.

Under this exception, "a lender may require a spouse's signature where, pursuant to state marital property laws, a credit applicant does not have sufficient property, separate from the community property, to meet the lender's standards for creditworthiness." *Resolution Trust Corp. v. Forest Grove, Inc.*, No. 92-6707, 1993 WL 349429, at * 3 (E.D. Pa. Sept. 8, 1993), *ovrr'd in part on other grounds by Resolution Trust Corp. v. Forest Grove, Inc.*, 33 F.3d 284 (3d Cir. 1994).[10]

Citgo argues that "because the Dhaliwals lived in, and relied upon property in, a community property state at the time [Bulk] requested credit from Citgo, it was reasonable for Citgo to believe that Mrs. Dhaliwal's signature was necessary on the Guaranty in order to make the community property available to satisfy the debt in the event of [Bulk's] default." (Citgo's Resp. to Mrs. Dhaliwal's Mot. for Summ. J. 9-10.)[11] It is not disputed that the Dhaliwals lived in Wisconsin and that Wisconsin is a community property state. Fatal to Citgo's argument, however, is its failure to present any evidence whatsoever regarding what "community property" the Dhaiwals relied upon, and Citgo officials considered, at the time they obtained Mrs. Dhaliwal's signature on the Guaranty. The only two financial statements in the record, the 1995 PFS and the 2005 PFS, appear to have been completed *after* the Guaranty was executed and certainly are not conclusive evidence of what Citgo considered at the time of obtaining Mrs. Dhaliwal's signature. Citgo argues that it formed a

---

[10] Citgo cited no case law applying § 202.7(d)(3), and the Court's research revealed only a few cases discussing this exception.

[11] Thus, for purposes of its motion, Citgo relied upon the "reasonably believed by the creditor to be necessary" component of the exception. *See* 12 C.F.R. § 202.7(d)(3).

"reasonable belief" that Mrs. Dhaliwal's signature was necessary but did not submit any evidence regarding how it formed such a belief or whether it considered Wisconsin property laws. *See* 68 Fed. Reg. 13144, 13192 (comments to § 202.2(7)(d)(2))[12] (providing that "[a] creditor's reasonable belief as to what instruments need to be signed by a person other than the applicant should be supported by a thorough review of pertinent statutory and decisional law or an opinion of the state attorney general").[13] Based on the limited record presented, the Court cannot conclude that Citgo is entitled to summary judgment based on the community property exception. *See Boyd v. U.S. Bank Nat'l Ass'n*, No. 06-2115, 2007 WL 2822518, at * 2 (D. Kan. Sept. 26, 2007) (finding that creditor was not entitled to summary judgment pursuant to exception in § 202.7(d)(2) because, *inter alia*, the bank "has not established when, how, or if its representatives reviewed the [personal financial statement] prior to [the wife's] execution of the Guaranty" and because the comments to § 202.7(d) "place the responsibility on the creditor to 'value' the applicant's interest in the jointly owned property, and defendant has presented no affidavit or other evidence in support of its motion for how it actually, prior to plaintiff's execution of the Guaranty, 'valued' [the husband's] interest in assets it assumed were joint"); *cf. Resolution Trust Corp.*, 1993 WL 349429, at * 3-4 (finding that

---

[12] Section 202.7(d)(2) is similar to § 202.7(d)(3), but it involves jointly held property rather than community property.

[13] In addition to pointing out Citgo's evidentiary failures, Mrs. Dhaliwal contends that Wisconsin law does not actually deprive Citgo of the ability to collect on "community property" in the event of default. *See* Wis. Stat. § 766.55(1) (providing that, "[a]n obligation incurred by a spouse during marriage . . . is presumed to be incurred in the interest of marriage"); *Condor Energy, Inc. v. Estate of Malone ex rel. Malone*, No. 01-1041, 2002 WL 417459, at * 6 (Ct. App. Wis. Mar. 19, 2002) (finding that judgment against a husband was a debt incurred in the interest of marriage and could therefore be satisfied by all marital property, including a jointly owned home, where the wife did not present evidence "to successfully rebut the presumption that the entire debt was incurred in the interest of the marriage"). The Court need not reach this issue because it is denying Citgo's motion on other grounds.

community property exception applied because the evidence of creditworthiness submitted to the lender "listed only property held jointly with his wife"; because "[t]he financial statement of personal net worth" submitted to the lender was in the name of both spouses and "listed only jointly held property"; and because, under Pennsylvania law, "the lender could not reach any jointly held assets unless the wife co-signed"). Here, there exists no such evidence, and Citgo is not entitled to summary judgment in its favor pursuant to the community property exception.

### E. Prejudgment Interest and Attorneys' Fees

For reasons explained below, the Court concludes that there exists a genuine question for trial as to whether Citgo violated the ECOA and therefore whether it may recover on its Guaranty Claim, including prejudgment interest, against Mrs. Dhaliwal. The Court will delay any rulings on entitlement to attorneys' fees until following trial, and any party seeking fees must file a new motion following trial.

## VI. Mrs. Dhaliwal's Motion for Summary Judgment

Mrs. Dhaliwal contends that she is entitled to summary judgment on the Guaranty Claim because her evidence establishes that Citgo committed an ECOA violation as a matter of law. Mrs. Dhaliwal ultimately bears the burden of proving the elements of her affirmative defense. *See Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) (explaining general rule that burden of proving affirmative defenses rests with the defendant). For purposes of summary judgment, Mrs. Dhaliwal must demonstrate that no disputed material fact exists regarding the affirmative defense asserted. *See Johnson v. Riddle*, 443 F.3d 723, 724 n.1 (10th Cir. 2006).

As her defense, Mrs. Dhaliwal asserts credit discrimination and, specifically, a violation of 12 C.F.R. § 202.7(d)(1). In order to establish credit discrimination based on a violation of §

202.7(d)(1), Mrs. Dhaliwal must prove: (1) Bulk applied for credit; (2) Citgo "required" her signature on the Guaranty in connection with Bulk's credit application; and (3) Mr. Dhaliwal qualified under Citgo's standards of creditworthiness for the amount and terms of the credit requested. *See* 12 C.F.R. § 202.7(d)(1).[14] It is not disputed that Bulk applied for credit from Citgo. The question, for purposes of Mrs. Dhaliwal's motion for summary judgment, is whether she has shown that no genuine issue of fact exists as to the remaining two elements.

The Court begins with the second element – that Citgo "required" Mrs. Dhaliwal's signature on the Guaranty. In her motion, Mrs. Dhaliwal submitted documentary evidence showing that (1) the application was submitted by Bulk and executed by Mr. Dhaliwal, and (2) the Guaranty, executed one month later, was executed by both spouses. In response to Mrs. Dhaliwal's motion, Citgo argued that Mrs. Dhaliwal was a "willing guarantor" of the debt but submitted no supporting record evidence. In reply, Mrs. Dhaliwal did not submit an affidavit or deposition testimony stating that she was "required" to sign the Guaranty, but instead relied upon the documentary evidence and argued that "[g]iven that she entitled to have the inferences on this issue drawn in her favor, it is equally likely that she only signed the Guaranty because Citgo required her to." (Mrs. Dhaliwal's Reply in Support of Mot. for Summ. J. 1.)

Mrs. Dhaliwal has not proven this element as a matter of law. The sequence of events – Mr. Dhaliwal only signing the application and Mr. and Mrs. Dhaliwal both subsequently signing the Guaranty – could give rise to an inference that Citgo required Mrs. Dhaliwal to execute the Guaranty as a condition to extension of the credit to Bulk. It could also give rise to no inference whatsoever,

---

[14] There are also exceptions contained in the regulation. The Court has determined that a party seeking to avoid a violation of § 202.7(d)(1) must prove such exception, rather than the party asserting the violation. *See supra* Part IV.

particularly in the absence of supporting testimony from the Dhaliwals. Testimony from Mr. or Mrs. Dhaliwal stating that Mrs. Dhaliwal was required to sign the Guaranty is notably absent from the record, as is any testimony from Citgo officials stating that she was not required to do so. Contrary to Mrs. Dhaliwal's argument, she is not entitled to have inferences drawn in her favor when she moves for summary judgment. Rather, the Court must draw inferences in favor of the non-movant, which is Citgo. Based on the record evidence, the Court finds that Mrs. Dhaliwal has not proven this element as a matter of law and is therefore not entitled to summary judgment in her favor on her ECOA defense.[15]

## VII. Conclusion

Citgo Petroleum Corporation's Motion for Summary Judgment Against Defendant Debra A. Dhaliwal (Doc. 83) is DENIED, and Motion for Summary Judgment of Defendant Debra A. Dhaliwal (Doc. 84) is DENIED. The parties are to submit a revised Pretrial Order in accordance with this Opinion and Order by October 8, 2010.

**SO ORDERED this 5th day of October, 2010.**

*[signature]*

**TERENCE KERN**
**United States District Judge**

---

[15] Because Mrs. Dhaliwal has not established this element, the Court does not reach whether Mrs. Dhaliwal has proven that no genuine issue of fact exists as to Mr. Dhaliwal's independent creditworthiness, which is typically the "determinative factual issue" in these cases. *See Riggs Nat'l Bank of Wash.*, D.C., 36 F.3d at 374. However, the Court notes that Citgo focused its arguments on the community property exception rather than Mr. Dhaliwal's lack of independent creditworthiness.